## In re RUTTENAUER.

### Patent Appeal No. 3352.

Court of Customs and Patent Appeals.
Dec. 3, 1934.

Thos. H. Brown, of Hoboken, N. J. (Lee B. Kemon and Alfred L. Taylor, both of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming the decision of the examiner, rejecting claims 1 to 8, inclusive, of appellant's application for patent, filed December 13, 1926. The said claims were rejected upon the ground that the application as originally filed did not support such claims, and further upon the ground that they are unpatentable over the prior art. Upon oral argument, appellant's counsel abandoned claims 4, 7, and 8, and the appeal as to those claims will be dismissed.

Claim 2 is representative of the claims on appeal and reads as follows: "2. A device for producing ultra-violet radiation while substantially excluding other radiation which comprises a container constituted in part at least of a black uviol glass and cooperating electrodes therein consisting of ultra-violet emitting incandescent refractory metal, and an ionizable gaseous medium in said container."

The references relied upon are:

Billon-Daguerre (British), 24,025, November 17, 1911.

Keyes, 1,186,993, June 13, 1916.

German patent, 305,798, May 21, 1918.

Gage et al., 1,305,793, June 3, 1919.

Gage et al., 1,305,794, June 3, 1919.

George, 1,671,109, May 29, 1928.

The application relates to ultra-violet radiation devices. The structure called for may be described as consisting of a tungsten arc lamp; an envelope of black uviol glass is provided, which is of such character as to permit the passage therethrough of ultra-violet rays, but not the radiations of longer wave length. Within this envelope are sealed two electrodes of refractory tungsten, together with a suitable gas, such as argon, neon, nitrogen, etc. When current is supplied to the lamp, these electrodes become incandescent. As originally filed, there was no statement in the application that the electrodes were incandescent and ultra-violet ray emitting. Amendments were offered by appellant reciting that the tungsten electrodes were incandescent in operation and that they emitted ultra-violet rays. These amendments were held by the examiner to constitute new matter and were rejected by him for that reason. The Board of Appeals, however, held that the application as originally filed did disclose incandescent tungsten electrodes, and to that extent reversed the finding of the examiner. The board agreed with the examiner that the application did not disclose that the incandescent electrodes emitted ultra-violet rays, and similarly held that the amendment with respect thereto was new matter. The board in its opinion stated: "In the application as originally filed there was no statement that the electrodes were ultra-violet emitting but appellant has inserted this limitation by amendment. The examiner holds that it is new matter. Appellant calls attention to the fact that at the bottom of p. 1 of the original specification it is stated that the tungsten arc lamp possesses a spectrum which extends to a shorter wave length than that of quartz mercury lamps. He urges that this indicates that the electrodes must emit ultra-violet rays in order to provide the shorter wave lengths. We are not convinced that this necessarily follows. In ultra-violet ray tubes it has been customary, as in appellant's construction, to fill the tubes with gas and while it may be true that with the use of the tungsten arc shorter wave lengths may be produced than with the mercury lamps, it does not follow that this is because the electrodes emit ultra-violet rays. It may be possible that the discharge with the tungsten arc produces a different effect on the gas and this results in the production of shorter wave lengths. It is our opinion, therefore, that there is nothing in the application as originally filed which conclusively proves that the tungsten electrodes emit ultra-violet rays."

Appellant in his reasons for appeal assigns error in holding that the application as originally filed does not conclusively prove that the tungsten electrodes emit ultra-violet rays, and insists that the emission of such rays is inherent in incandescent tungsten electrodes. In support of this he cites a number of technical publications, all of which support his statement that the emission of ultra-violet rays is inherent in incandescent tungsten electrodes. See Ultra-violet Radiation, by M. Luckeish, D. Van Nostrand Company, 1922; also Astrophysical Journal for the month of April, 1917. The Solicitor for the

Patent Office, upon oral argument, made no contention that appellant was not correct in this statement. We are constrained to find that the Board of Appeals was in error in rejecting the amendment reciting the emission of ultra-violet rays by the incandescent tungsten electrodes.

We next come to the consideration of the rejection of the claims here involved as not patentable in view of the references cited.

Of the references cited, we find it necessary to consider only the patents to Keyes, Gage, et al., and the German patent, No. 305,-798.

The Keyes patent discloses an ultra-violet generator consisting of an envelope having therein electrodes which, it is stated, may be of tungsten, and a gaseous filling. The envelope is of quartz, which, it is stated, is known to be transparent to ultra-violet ray radiation. The patent states that "for quartz may be substituted any other material transparent to the ultra violet rays."

The patents to Gage et al. disclose a composition for glass; the patents state: "Our invention relates to a glass which has high transmission for the ultra-violet rays while absorbing practically all of the visible light, and which is useful for certain purposes where such a glass is desirable."

That the glass disclosed by these patents is "black uviol glass" is admitted by appellant's counsel. In their brief it is stated: "The reference patents to Gage et al. No. 1,305,793 and No. 1,305,794 disclose a *composition* for 'black uviol glass' such as is utilized for the bulb or envelope of appellant's ultra-violet ray device. The patentee was aware of the valuable *optical* properties of such glass, but as to possible uses for the glass, stated merely that it 'is useful for certain purposes where such a glass is desirable.'"

The German patent, No. 305,798, relates to apparatus for treating the sick by means of light rays and discloses an ultra-violet generator in which the walls are made of a uviol glass pervious to certain wave lengths only. The patent states: " * * * According to the invention, * * * electric incandescent metal filament lamps will have interposed in front of them a filter which screens off the specially short wave *wave* rays, the wave length of which lies below the order of 280 millimicrons but which allows the passing of the ultra-violet rays exceeding the order of wave length mentioned and the visible radiation, suitable in the manner known for light

sources similar in shape to the wall of the receptacle surrounding the metal filament. As substance for this filter there is specially suited that variety of glass known by the name of uviol glass and hitherto employed only for mercury vapor lamps in which only rays down to 280 millimicrons are let through."

The single claim of said German patent reads as follows: "An apparatus for treating the sick by means of light rays, distinguished thereby, that as sources for the electric radiation there are employed electric metal filament lamps the walls of which may consist of uviol glass, for example, and are permeable for light rays down to the shortest wave lengths still contained in sunlight (that is, those of the order of 280 millimicrons) but not permeable to a noteworthy degree for shorter light waves."

Upon oral argument appellant's counsel raised some question as to the correctness of the English translation of said German patent appearing in the record, claiming that in the original patent it does not plainly appear that the uviol glass there referred to is utilized as an envelope for the lamps there referred to. So far as appears from the record, appellant raises the question for the first time upon oral argument here. He made no objection to such translation before the Patent Office tribunals, nor did he seek to make any correction thereof. In view of these facts and the further fact that it does not clearly appear that there is any error in such translation, we think we should accept such translation of the German patent as correct.

It therefore appears that a lamp, having an envelope in which are sealed two electrodes of refractory tungsten and a gas, was known in the prior art. Black uviol glass and its properties were known to the prior art. The use of uviol glass, not black, as walls for lamps to permit the passing therethrough of ultra-violet rays, but screening the passing of certain other rays, was known to the prior art.

The single question is therefore presented of whether it involved the exercise of the inventive faculty to provide an envelope for lamps described by appellant consisting in part of glass such as is described in the patents to Gage et al. That this is the issue with respect to the references is conceded by appellant's counsel. In their brief it is stated: "From a consideration of the prior art, it is clear that the instant invention involves a *new* combination of elements leading to a *new and useful result*, since, in many circumstances, it is desirable to employ ultra-violet ra-

diation devoid of heat rays or visible light rays. The novel combination is the inclusion in the envelope wall of a screening or selective medium which is practically opaque to all rays except the ultra-violet."

It is very clear that, if the black uviol glass disclosed by Gage et al. were substituted for the quartz disclosed by Keyes, the Keyes patent would be a complete anticipation of appellant's alleged invention. Inasmuch as the glass described in the Gage et al. patents was fully stated therein as having the property of being transparent to ultra-violet rays, but absorbing practically all visible light rays, and as it was old to use uviol glass, *not black*, for walls of ultra-violet ray lamps, it seems very clear to us that no invention would be involved in providing an envelope of black uviol glass such as is described in the Gage et al. patents for the electrodes and gas described and claimed by appellant. It seems to us that what appellant has done would, in view of the German patent, be an obvious use of the glass described by the Gage et al. patents.

For the reasons stated, the appeal is dismissed as to claims 4, 7, and 8, and the decision of the Board of Appeals is affirmed as to claims 1, 2, 3, 5, and 6.

Affirmed.